51 391
57 578

## JAMES McFADDEN v. JOHN P. WHITNEY AND THOMAS W. SYNOTT, PARTNERS.

1. Process issuing irregularly from a court of competent jurisdiction to a proper officer will justify such officer, acting under it, at any time before it is vacated, but such process, when vacated, is no justification to the party who procured it to be issued.
2. The irregularity to charge the party must be in the pursuit of legal methods, which constitutes a mistake of law, and not a mere mistake of fact.
3. An action cannot be maintained against a creditor who regularly sues out a writ of attachment against his debtor, in a court of competent jurisdiction, unless he has no reasonable or probable cause to make the affidavit upon which it is founded. If he acts rashly and without due care and circumspection, the presumption of malice will arise against him, and he must respond in damages if it is set aside. In the absence of malice, he pursues his remedy only at the peril of costs.
4. If a creditor causes the goods of his debtor to be seized by virtue of a writ of attachment issued out of a court which has no jurisdiction, he becomes a trespasser *ab initio.*
5. In such case the fact that the goods were subsequently returned to the debtor must be considered in mitigation of damages.

On rule to show cause.

Argued at February Term, 1889, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff, *John W. Wescott.*

For the defendant, *Thomas E. French.*

The opinion of the court was delivered by

VAN SYCKEL, J.    In January, 1887, the defendants caused a writ of attachment to be issued by a justice of the peace against the plaintiff for the sum of $200.    Under this attachment the goods of the plaintiff were attached and sold.    On the 8th of February, 1887, this suit was discontinued, and the defendants caused another attachment to be issued against the plaintiff out of the Gloucester county Circuit Court.    Under this second attachment the same goods of the plaintiff were again attached.

The second writ of attachment was afterwards quashed by said Circuit Court on the ground that, at the time of the issuing of the writ the defendant in attachment was a resident of the State of New Jersey.

The plaintiff then brought this suit for the wrongful taking and detention of his goods under the two writs of attachment.

The trial court, upon this state of facts, charged the jury that the defence was complete under the writ of attachment, and directed a verdict for the defendants.

A justice of the peace cannot issue an attachment for a debt which exceeds the sum of $100.    *Wright* v. *Moran,* 14 *Vroom* 49.

The justice, therefore, had no jurisdiction.    The first seizure of the plaintiff's goods being under a void writ was without justification.

The defence cannot rest upon the first writ of attachment.

The only question in the case is, whether the quashed writ furnishes immunity to the defendants for acts done under it before it was set aside.

In *Codrington* v. *Lloyd,* 8 *Ad. & E.* 449, an arrest was made under a process which was afterwards set aside for

irregularity. Lord Denman held that the party who had sued out the writ was liable to an action for damages; that the process, when set aside, must be regarded as if it had never existed, and therefore the defendant could not justify under it.

The rule laid down in the English cases is, that process issuing irregularly from a court of competent jurisdiction to a proper officer will justify such officer, acting under it, at any time before it is vacated, but that such process, when vacated, is no justification to the party who procured it to be issued. *Parsons* v. *Lloyd*, 2 *W. Bl.* 845; *King* v. *Harrison*, 16 *East* 612; *Grant* v. *Bagge*, 3 *Id.* 128.

This is also the established doctrine in New York.

In *Chapman* v. *Dyett*, 11 *Wend.* 31, the suit was for false imprisonment under a *ca. sa.*, set aside as irregularly sued out.

Chief Justice Savage, in delivering the opinion of the court, said: "When the *ca. sa.* was set aside for irregularity, it ceased to be a justification to the parties guilty of the irregularity; as to them it is void, and as if it had never existed. The arrest, therefore, by relation, became void and without authority."

In *Lyon* v. *Yates*, 52 *Barb.* 237, it was held that, after an attachment under which goods have been seized has been set aside as irregular, it affords no shield or protection to the plaintiffs for such taking. The moment it is set aside they stand as though no process had ever been issued, and become trespassers *ab initio.*

*Kerr* v. *Mount*, 28 *N. Y.* 659, is to the same effect, as is also *Hayden* v. *Shed*, 11 *Mass.* 501.

What the irregularity was for which the process had been set aside in Codrington v. Lloyd does not appear in the report of the case.

In all the other cases which have been cited, the fatal irregularity consisted in a failure to take the steps necessary to entitle the party to sue out the writ. They were irregularities which, on the face of the proceedings, showed that the process could not lawfully issue.

In Parsons *v.* Lloyd the *capias* was set aside because a term intervened between the teste and the return.

In King *v.* Harrison the *ca. sa.* was sued out for over £1,200, when but £300 were due upon the judgment.

In Grant *v.* Bogge the *fi. fa.* was directed to the wrong person.

In Chapman *v.* Dyett the *ca. sa.* was declared to be irregular because it was sued out previous to the issuing of a *fi. fa.*

In Lyon *v.* Yates the affidavits on which the attachment issued were insufficient and not in conformity to the requirement of the law.

In Kerr *v.* Mount it appeared, on the face of the proceedings, that the writ should not have issued.

But, in the case before us, there is an element which is absent in every case before cited, which, in my judgment, must draw to it the application of a wholly different rule, by which the availability of the attachment, as an arm of defence, is to be tested.

The Attachment act authorizes an attachment to be issued when the creditor makes oath that he verily believes that his debtor absconds, or that his debtor is not, to his knowledge or belief, resident in the state.

In *Lummis* v. *Boon,* 2 *Penn.* 734, Mr. Justice Pennington suggested a doubt whether the affidavit of the plaintiff was not conclusive.

That doubt was removed by the case of *City Bank* v. *Merrit,* 1 *Gr.* 131, in which Chief Justice Ewing delivered the opinion of the court, holding that the affidavit of the plaintiff in attachment might be controverted. He, however, says, "That the plaintiff may, from wrong information or other causes, very honestly and excusably fall into error concerning the absconding or residence of the debtor." By this I understand him to mean excusable in a legal sense, excusable to the extent that it will be a justification.

The statute gives the creditor the legal right to his attachment upon filing the requisite affidavit. While the debtor may come into court and raise the issue, whether or not he

did abscond or was non-resident, the finding, on that issue, in favor of the debtor, cannot convert a legal act, expressly authorized by positive law, into an illegal act, so far as to make the creditor a trespasser *ab initio.*

It is not an irregularity on the face of the proceedings, it is not a defect in the proceedings resulting from a failure to observe the law. Every one is presumed to know the law; a mistake as to the law constitutes no defence. That is the underlying principle of the cases which have been cited, which were mistakes of law. Here there was a mistake as to fact, as to whether the debtor had absconded. An error in that respect, unless the creditor has acted rashly, unless there was an absence of reasonable and probable cause to justify his action, cannot constitute the basis for an action against him.

It may be affirmed that no well considered case can be found, in which an action of tort has been successfully maintained against a creditor for prosecuting a suit against his debtor, in which he strictly pursued all the forms and requirements of law, unless it appeared that he was actuated by malice.

This distinction is clearly recognized in this court in the case of *Bitz* v. *Meyer,* 11 *Vroom* 252.

Malice may be implied in the presence of such facts as show that the creditor, in making his affidavit, did not act with ordinary prudence, but an action will not lie unless malice appears in the case.

Even the malicious prosecution of a civil suit will not constitute a ground of action unless the defendant has been arrested without cause and deprived of his liberty, or made to suffer other special grievance superadded to the ordinary expense of a defence. *Bitz* v. *Meyer, supra.*

The policy of the law has always been to guarantee immunity to suitors who, in good faith, adopt and pursue the due forms of the law, although they may ultimately fail to establish their claims.

Attachment is the only method of bringing the debtor into court, when he cannot be served with summons.

Practically it will be of slight value, if it cannot be adopted by a creditor, acting with due prudence and circumspection, without subjecting himself to the risk of damages in excess of his own claim.

How will the creditor proceed with safety?

After exhausting all sources of information open to him, it may appear to be clear, that the debtor has absconded, and yet the debtor, on his return, may be able to explain satisfactorily every circumstance upon which the creditor relied. Sometimes it is a question of doubt and difficulty, whether the plaintiff in attachment had made a mistake of fact, involving, in its solution, the credibility of witnesses, and the careful weighing of their testimony. There have been close cases in our courts, cases in which judges have differed, as to whether, on the facts proven, an attachment will lie. Is the party prosecuting the writ of attachment to be mulcted in damages for an error in such cases?

There is no sound principle upon which he could be made an exception to the general rule applicable to this branch of the law.

That by the common consent of the bar such an action will not lie is evinced by the fact, that there is not in our reports any case in which even an attempt has been made to establish legal liability in the absence of malice.

In my judgment the true rule is, that an action cannot be maintained against a creditor, who regularly sues out a writ of attachment against his debtor in a court of competent jurisdiction, unless he has no reasonable or probable cause to make the affidavit. If he acts rashly and without due circumspection and care, the presumption of malice will arise against him, and he must respond in damages. In the absence of malice, he pursues his remedy only at the peril of costs.

The seizure made under the writ issued by the justice was as much a trespass as though made without any legal authority or process, and for that act of the defendants, the plaintiff is entitled at least to nominal damages. The fact that the goods attached were subsequently returned to the

debtor must be considered in mitigation of the damages. *Hopple* v. *Higbee,* 3 *Zab.* 342.

The trial judge therefore erred in directing a verdict for the defendants.

There should be a new trial.